**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NATIONAL SEATING & MOBILITY, INC.,

    Plaintiff,

    v.

MICHAEL PARRY, et al.

    Defendants.

AND RELATED COUNTER-CLAIM
_____/

No. C 10-02782 JSW

**ORDER DENYING MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION**

Now before the Court for consideration is the Motion for Class Certification filed by Defendant/Counterclaimant Michael Parry ("Parry"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and the Court finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court HEREBY VACATES the hearing set for October 14, 2011 and DENIES Parry's motion.

**BACKGROUND**

On May 24, 2010, Parry filed a First Amended Cross-Complaint ("FACC"), in which he asserts putative class claims against National Seating & Mobility, Inc. ("NSM"). As summarized in the FACC, Parry seeks relief for himself and the putative class for NSM's "willful and unlawful failure to properly calculate compensation due to Plaintiff and Plaintiff class, for misrepresenting the amount of compensation due ... (and paying the compensation based off these misrepresentations), and [NSM's] willful and deliberate efforts to conceal ... the

compensation lawfully due" Parry and the putative class members. (FACC at 2:9-13.)

The allegations giving rise to the putative class claims are premised on the following facts. NSM provides specialty rehabilitation equipment to individuals with severe physical disabilities. (Declaration of Ronald S. Bushner ("Bushner Decl."), Ex. A (Deposition of William Michael Ballard ("Ballard Depo.") 36:14-37:25).) In 2007, Parry and NSM entered into a Employment Agreement, whereby NSM would employ Parry at its Hayward, California branch as a Rehabilitation Technological Supplier ("RTS"). (*See* Declaration of Michael Parry ("Parry Decl."), ¶ 3 Ex. A (Employment Agreement).)

The terms of the Employment Agreement include a Compensation Schedule, which provides that Parry "shall receive, as compensation, that amount which is equal to twenty percent (20%) of Employee's proportional share of the total branch Gross Base Office Profits attributable to sales of Equipment made by Employee during the term of this Employment Agreement. (Employment Agreement, ¶ 4 & Ex. A.) The term "Gross Base Office Profits" means "sales minus cost of goods, shipping charges, sales adjustments, allowances for bad debt and bad debt write off." (*Id.*; *see also* Declaration of Mark Meuser ("Meuser Decl."), Ex. F (NSM Resp. to Interrogatory 4.)) It is undisputed that while most RTS employees had similar Employment Agreements and Compensation Schedules, there are employees who have received a greater or lesser percentage of Gross Base Office Profits. (Bushner Decl., Ex. A (Ballard Depo. at 15:5-16, 19:21-21:16).)

Parry claims that NSM did not properly report to its commissioned sales force the true costs of goods or give them a proper accounting of how cost of goods was calculated, because NSM failed to include rebates that it received from suppliers when it calculated compensation. (*See* FACC ¶¶ 27-29, 67, 73, 85, 93.) NSM also does business with Kaiser Permanente. According to the record, unlike most of the insurers with whom NSM works, Kaiser does not work on a fee for service basis. (*See* Declaration of Michael William Ballard ("Ballard Decl."), ¶¶ 14-17; Bushner Decl., Ex. A (Ballard Depo. at 111:1-113:25).) To address this difference, unlike other accounts, NSM claims that it pays RTSs working for Kaiser under the Standard Compensation Schedule by assuming a margin on Kaiser sales that is similar to the margin on

1 FFS sales. (*See* Meuser Decl., Ex. C (Ballard Depo. at 110:23-25; Ballard Decl., ¶ 18; *see also*
2 Bushner Decl., Ex. A (Ballard Depo. at 114:1-115:25)).) Parry contends that these actions
3 improperly changed the terms of the manner in which commissions were calculated for the
4 Kaiser account.

5      Parry asserts claims on behalf of the putative classes for: Failure to Calculate Wages;
6 Fraud; Negligent Misrepresentation; Breach of the Implied Covenant of Good Faith and Fair
7 Dealing - Bad Faith; Violations of California Business & Professions Code §§ 17200, *et seq.*;
8 and a Request for an Accounting. Parry seeks to certify a nationwide class, for each of these
9 claims, that consists of all RTS employed by NSM during the class period with respect to the
10 failure to include rebates when calculating commission ("the Nationwide Rebate Class"). Parry
11 also seeks to certify a subclass, for each of these claims, that consists of all California RTSs
12 employed by NSM to service NSM's contracts with Kaiser Permanente during the class period
13 (the "California Kaiser Subclass").[1]

14 **ANALYSIS**

15 **A. Evidentiary Issues.**

16      NSM objects to portions of the declarations submitted by Michael Parry and Mark
17 Meuser in support of this motion. NSM objects to paragraphs 13-15 of the Parry declaration,
18 which address facts relevant to whether the proposed classes are sufficiently numerous, on the
19 basis that statements therein lack foundation and are speculative. (*See* Opp. Br. at 14:11-19,
20 22:13-20.) In paragraphs 13-15, Parry attests that while he was working for NSM there were
21 over 100 RTS around the country at any given time, and approximately 25 RTS in California.
22 He also attests that it his understanding most, if not all, RTS in California worked on the Kaiser
23 contract. Parry attests that he has personal knowledge of these facts, and he attests that he knew
24 or interacted with many of these RTS. In addition, Parry submits a supplemental declaration in

---

[1] In the FACC, Parry alleges the class period commences on February 5, 2006 for the Section 17200 claim and the demand for an accounting and alleges that it commences on February 5, 2007 for all other class claims. (FACC ¶ 23.) However, in his reply brief, he suggests that it should commence earlier, based on applicable statutes of limitations in Tennessee. In light of the Court's ruling on this motion, the Court does not resolve the issue of when the class period should commence.

3

1  which he identifies by name a number of RTS who worked on the Kaiser account.
2  (Supplemental Declaration of Michael Parry, ¶¶ 4-5.) Finally, the Court notes that when it
3  removed this Notice of Removal, NTS attested that it "employed and employs persons receiving
4  commissions in each of its offices" located in various states, and that "[t]he number of these
5  persons is in excess of 100." (*See* Declaration of Donald Giglio in Support of Notice of
6  Removal Action, ¶ 3.) NSM's objections to paragraphs 13-15 are overruled.

Because the Court did not need to rely on the other evidence to which NSM has objected to resolve this motion, those objections are overruled as moot.

### B. Applicable Legal Standards to a Motion for Class Certification.

"Class certifications are governed by Federal Rule of Civil Procedure 23," and a plaintiff seeking class certification bears the burden of "demonstrating that he has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). Where, as here, a plaintiff seeks to certify subclasses, "[e]ach subclass must independently meet the requirements of Rule 23 for the maintenance of a class action...." *Betts v. Reliable Collection Agency*, 659 F.2d 1000, 1005 (9th Cir. 1981). If a plaintiff fails to establish any of Rule 23's requirements, it will "destroy[] the alleged class action." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 674 (S.D. Cal. 1999) (citing *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975). Any doubts regarding the propriety of class certification generally should be resolved in favor of certification. *See, e.g., Gonzales v. Arrow Fin. Servs., LLC*, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007). However, "[c]lass certification is not immutable, and class representative status could be withdrawn or modified if at any time the representatives could no longer protect the interests of the class." *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (citing *Soc. Servs. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 948-49 (9th Cir. 1979)).

4

**C.    Parry Has Not Met His Burden to Show that the Classes Should be Certified.**

In order to prevail on his motion, Parry must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In order to certify a class under Rule 23(b)(3), Zeisel must establish that "common questions . . . 'predominate over any questions affecting only individual members,'" and he also must establish that class resolution is "'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(b)(3)).

The Court concludes that Parry has demonstrated that the Nationwide Rebate Class is "so numerous that joinder of all members is impracticable," but it also concludes that he has not met this burden with respect to the California Kaiser Subclass. There is no "magic number" that will satisfy the numerosity requirement, and "the number of potential class members needed to satisfy numerosity varies with other factors, such as geographical dispersion and difficulty in identifying class members." *Foster v. City of Oakland*, 2009 WL 88433, at * 3 (N.D. Cal. Jan. 13, 2009) (citing, *inter alia*, *Moeller v. Taco Bell*, 220 F.R.D. 604, 608 (N.D. Cal. 2008). Parry presents evidence, corroborated by NSM's statements in support of its Notice of Removal, that the Nationwide Rebate Class consists of at least 100 members throughout the United States. In contrast, the California Kaiser Subclass consists of approximately 25 members. Parry does not specifically state whether these class members would be located in California, but he also has not suggested that they are so geographically dispersed as to make joinder impracticable. In addition, there is no evidence in the record that shows that it would be difficult to identify them. Indeed, on reply, Parry submits a declaration in which he identifies twenty potential class members. (Supplemental Declaration of Michael Parry, ¶ 4.)

The parties also raise a choice of law dispute that precludes the Court from certifying the Nationwide Rebate Class, because it impacts the analysis of whether Parry can meet the

5

commonality and predominance requirements.  *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) ("Understanding which law will apply before making a predominance determination is important when there are variations in applicable state law.").  In his opening brief, Parry argued that California law applies to each of the class claims.  On reply, however, he argues that the choice of law provision in the Employment Agreement governs and, thus, argues that Tennessee law applies to each of the class claims.  As the moving party and the party seeking to apply Tennessee law to a nationwide class, Parry bears the burden of demonstrating that the application of Tennessee law would satisfy constitutional due process requirements under *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).  *See Zinser*, 253 F.3d at 1187.

A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law.  *Id.*  California law sets forth two different choice of law tests:

> When the parties have an agreement that another jurisdiction's law will govern their disputes, the appropriate analysis for the trial court to undertake is set forth in *Nedlloyd* [*Lines B.V. v. Superior Court*, 3 Cal.4th 459 (1992)], which addresses the enforceability of contractual choice-of-law provisions.  Alternatively, when there is no advance agreement on applicable law, but the action involves the claims of residents from outside California, the trial court may analyze the governmental interests of the various jurisdictions involved to select the most appropriate law.  As we shall explain, a trial court considering nationwide class certification might be required to utilize both analyses.

*Washington Mutual Bank, FA v. Superior Court*, 24 Cal.4th 906, 914-15 (2001).

Parry argues that the choice of law provision in the Employment Agreement applies.  Under the framework set forth in *Nedlloyd*, "the trial court should first examine the choice-of-law clause and ascertain whether the advocate of the clause has met its burden of establishing that the various claims of putative class members fall within its scope."  *Washington Mutual*, 24 Cal.4th at 916.  Parry's putative class claims are not limited to a breach of contract claim.  Rather, he asserts claims for fraud, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing.  Parry provides no analysis as to why these claims would fall within the scope of the choice-of-law provision, such that Tennessee

6

1  law should apply to the exclusion of any other state's laws.  In addition, to the extent the
2  choice-of-law provision would not apply to these claims, Parry fails to offer any analysis under
3  California's governmental interest analysis to determine why Tennessee law would apply to the
4  exclusion of any other jurisdiction.  Similarly, Parry fails to offer any analysis as to how the
5  Court could constitutionally apply Section 17200 to the Nationwide Rebate Class, let alone
6  whether Tennessee has an equivalent unfair competition law that could be constitutionally
7  applied to the nationwide class.

8  Finally, the Court addresses the issue of adequacy of representation.  "To satisfy
9  constitutional due process concerns, absent class members must be afforded adequate
10 representation before entry of a judgment which binds them."  *Hanlon*, 150 F.3d at 1020.  In
11 order to determine whether the adequacy prong is satisfied, courts consider the following two
12 questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest
13 with other class members, and (2) will the representative plaintiffs and their counsel prosecute
14 the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir.
15 2003).

16 NSM argues that Parry is not an adequate class representative on the basis that Parry
17 was not a stellar employee.  NSM also suggests that Parry's damages in this case are so small
18 that it "would hardly be enough to ensure vigorous prosecution on Parry's part."  (Opp. Br. at
19 19:13-14.)  The Court finds NSM's arguments are without merit.  NSM does not suggest that
20 Parry has any conflicts with the class.  Parry also attests, under oath, that he has no conflicts of
21 interests with any of the absent class members, and that he will "competently and vigorously
22 prosecute the class action on behalf of the proposed class."  (Parry Decl., ¶¶ 13, 16.)  With the
23 exception of its speculation that Parry may "be more interested in harming NSM" than in
24 "ensuring adequate representation for a class," NSM has failed to offer any evidence to show
25 that Parry's interests are antagonistic to absent class members.  (*Id.* at 19:17-19.)

26 Although the Court finds that Parry has met his burden to show that he is an adequate
27 class representative, the Court has concerns about his showing with respect to his choice of
28 class counsel.  If Parry renews his motion, he should supply additional information about

7

counsel's qualifications to prosecute a nationwide class action with "zeal and competence." *Fendler v. Westgate California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975).

## CONCLUSION

For the foregoing reasons, Parry's Motion for Class Certification is DENIED. This ruling, however, is without prejudice to Parry's renewing the motion to address the deficiencies identified herein.

**IT IS SO ORDERED.**

Dated: October 12, 2011



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

8