C. BROOKS CUTTER, SBN 121407
JOHN R. PARKER, JR. SBN 256775
KERSHAW, CUTTER & RATINOFF LLP
401 Watt Avenue
Sacramento CA 95864
Telephone: (916) 448-9800/Fax: (916) 669-4499
bcutter@kcrlegal.com
jparker@kcrlegal.com

MARK P. MEUSER, SBN 231335
JONATHON PAUL HAUENSCHILD, SBN 249615
MEUSER LAW GROUP, INC.
PO Box 5412
Walnut Creek, CA 94596
Telephone: (415) 577-2850/Fax: (925) 262-4656
mark@meuser-law.com
jonathon@meuser-law.com

Attorneys for Michael Parry and the putative class of similarly-situated individuals

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL SEATING & MOBILITY, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL PARRY and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No.: 3:10-cv-02782-JSW <br><br> **SECOND AMENDED COUNTER-COMPLAINT FOR MICHAEL PARRY:** <br><br> 1. Breach of Contract – employment contract <br> 2. Wage Claim <br> 3. Waiting Time Penalties <br> 5. Private Attorney General Act |
| MICHAEL PARRY, individually and on behalf of all others similarly situated, <br><br> Counter-Claimant, <br><br> vs. <br><br> NATIONAL SEATING & MOBILITY, INC., <br><br> Counter-Claim Defendant. | **CLASS CLAIMS** <br><br> 6. Breach of Contract <br> 7. Failure to Calculate Wages <br> 8. Fraud <br> 9. Negligent Misrepresentation <br> 10. Breach of Implied Covenant of Good Faith and Fair Dealing <br> 11. Violation of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 <br> 12. Request for an Accounting |

1

Michael Parry, Counter-Complainant, alleges as follows:

**INTRODUCTION**

This Second Amended Counter-Complaint is brought by Michael Parry individually and on behalf of all others similarly situated, to address and remedy various wrongs committed against him and all members of the proposed National Rebate Class and California Kaiser Subclass, described below.

**GENERAL ALLEGATIONS SPECIFIC TO**

**COUNTER-CLAIMANT'S INDIVIDUAL CAUSES OF ACTION**

1.     Michael Parry (hereinafter Counter-Claimant) is a resident of Alameda County.

2.     National Seating and Mobility, Inc. (hereinafter Counter-Claim Counter-Claim Defendant) is, and at all relevant times herein was, a corporation organized and existing under the laws of the State of Tennessee. Counter-Claim Defendant is licensed to do business in the State of California.

3.     Counter-Claim Defendant has an office in Hayward California.

4.     On or about March 1, 2001, Counter-Claimant was employed by Counter-Claim Defendant.

5.     On or about July 28, 2005, Counter-Claimant's supervisors, Tim Maddox and Ken Wilcox informed Counter-Claimant that he was entitled to a $20,000.00 reward/bonus.

6.     To date, Counter-Claimant has never received the $20,000.00 reward/bonus.

7.     Late in 2006, Counter-Claimant changed positions within Counter-Claim Defendant's company and went back to work as a commission salesperson.

8.     On or about March 1, 2007, Counter-Claimant entered into an Employment Agreement with Counter-Claim Defendant pertaining to the terms of his employment with Counter-Claim Defendant as a Rehab Technology Supplier (hereinafter RTS).

9.     Counter-Claimant's primary clients as an RTS were individuals who had health plans through Kaiser Permanente.

10.     Counter-Claimant developed a book of business of approximately one (1) million dollars.

11.     In May of 2008, Counter-Claim Defendant restructured the Hayward branch by adding a second Rehab Technology Supplier to split the Kaiser Permanente clients.

12.     The new Rehab Technology Supplier was younger than Counter-Claimant.

13.     When Counter-Claimant was terminated on March 31, 2009, he was informed that Counter-Claim Defendant had decided to reduce operations back to a single RTS covering the Kaiser Permanente clients.

14.     Based upon information and belief, the younger employee was retained during this downsizing.

15.     Paragraph 7 of the March 1, 2007 Employment Agreement states that "Except where termination is for cause, either Employer or Employee may terminate employment by providing written notice six (6) months prior to the effective termination date.

16.     On or about March 31, 2009, Counter-Claimant was wrongfully terminated by Counter-Claim Defendant.

17.     Counter-Claim Defendant did not give Counter-Claimant six (6) months' notice as per Paragraph 7 of the March 1, 2007, Employment Agreement.

18.     Counter-Claim Defendant did not pay to Counter-Claimant six (6) months' salary, in lieu of giving him six months' notice.

## CLASS ACTION ALLEGATIONS

19.     Counter-Claimant brings this action on his own behalf and on behalf of all persons similarly situated within the following proposed class and subclass:

> All Rehab Technology Suppliers ("RTSs") employed by National Seating & Mobility, Inc. ("NSM"), for the period from February 5, 2004 until the present who signed an Employment Agreement with NSM that contains a Tennessee choice of law clause and which contains a "COMMISSION ON SALES" provision that defines "Gross Base Office Profits" as "sales minus cost of goods, shipping changes, sales adjustments, allowance for bad debt and bad debt write off." This is the "National Rebate Class".

> All Rehab Technology Suppliers ("RTSs") employed by National Seating & Mobility, Inc. ("NSM") to service Kaiser Permanente ("Kaiser") in California, for the period from February 5, 2004 until the present who signed an Employment Agreement with NSM that

3

contains a Tennessee choice of law clause and which contains a
"COMMISSION ON SALES" provision that defines "Gross Base
Office Profits" as "sales minus cost of goods, shipping changes, sales
adjustments, allowance for bad debt and bad debt write off."  This is
the "California Kaiser Rebate Class".

20.      Each of the classes that Counter-Claimant seeks to represent is so numerous that
the joinder of all such persons is impracticable and that the disposition of their claims in a class
action, rather than in individual actions, will benefit the parties and the court.

21.      There is a well-defined community of interest in the questions of law and fact
involved affecting the Counter-Claimant and members of the National Rebate and California
Kaiser Classes in that it is alleged that Counter-Claim Defendant did not properly pay
commission wages. These questions of law and fact predominate over questions that affect only
individual National Rebate and California Kaiser Class Members. The claims of the Counter-
Claimant are typical of those of the class and Counter-Claimant will fairly and adequately
represent the interests of the class.

22.      As used throughout this Second Amended Counter-Complaint, the terms "Class
Members" and/or "Counter-Claimant Class" and/or "Members of the National Rebate and
California Kaiser Classes" refer to the named Cross-Complainant herein as well as each and
every person eligible for membership in the National Rebate and California Kaiser Classes, as
further described and defined below.

23.      At all times relevant herein, Counter-Claimant was, and is, a person within the
class of persons further described and defined below.

24.      The "Class Period" is designated as the time from February 5, 2004 until the
present.  Counter-Claim Defendant's improper and unlawful conduct commenced before
February 5, 2004 and has continued through the present. Counter-Claimant and members of the
National Rebate and California Kaiser Classes also hereby reserve the right to amend this
Complaint for Damages and to enlarge, or reduce, the "Class Period" as discovery in this matter
proceeds.

Second Amended Counter-Complaint for Michael Parry

25.     Counter-Claimant, and members of the National Rebate and California Kaiser Classes, have incurred and, during the pendency of this action, will incur expenses for attorney's fees and costs herein. Such attorney's fees and costs are necessary for the prosecution of this action and will result in a benefit to each of the members of the class.

26.     Counter-Claim Defendant required all RTS sign an employment agreement in which they were paid a commission based upon a percentage of Employee's proportional share of the total branch's "Gross Base Office Profits."

27.     The term "Gross Base Office Profits" is defined to mean sales minus cost of goods, shipping charges, sales adjustments, allowances for bad debt and bad debt write off.

28.     Counter-Claim Defendant did not properly report to Counter-Claimant and members of National Rebate and California Kaiser Classes the true cost of goods.

29.     Counter-Claim Defendant refused to give to Counter-Claimant and members of the National Rebate and California Kaiser Classes a proper accounting of how cost of goods was calculated.

30.     Many manufactures gave kickbacks and/or rebates to Counter-Claim Defendant thus lowering the true cost of goods and this increased profit was not reported to Counter-Claimant and the members of the National Rebate and California Kaiser Classes.  A result, Counter-Claimant and the National Class and California Kaiser Subclass did not receiving their proper commissions.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT – EMPLOYMENT AGREEMENT**
**By Michael Parry individually against Counter-Claim Defendant**

31.     Counter-Claimant realleges and incorporates as if fully set forth herein each of the allegations of this Second Amended Cross-Claim as if fully set forth herein.

32.     On or about March 1, 2007, Counter-Claimant executed an Employment Agreement with Counter-Claim Defendant as a Rehabilitation Technological Supplier (RTS).

33.     Paragraph 7 of the March 1, 2007, Employment Agreement states that "Except where termination is for cause, either Employer or Employee may terminate employment by providing written notice six (6) months prior to the effective termination date.

5

34.     On or about March 31, 2009, Counter-Claim Defendant wrongfully terminated Counter-Claimant's employment without cause and without giving him six (6) months written notice.

35.     Upon termination Counter-Claim Defendant also failed to provide a "true-up" pursuant to the Compensation Schedule, which shows basis for calculating commissions.

36.     At the time Counter-Claimant was wrongfully terminated by Counter-Claim Defendant, Counter-Claimant had performed all obligations to Counter-Claim Defendant except those obligations Counter-Claimant was prevented or excused from performing.

37.     Because of Counter-Claim Defendant's breach of contract, Counter-Claimant suffered a minimum of $32,500 in lost salary.

### SECOND CAUSE OF ACTION
### WAGE CLAIM
**By Michael Parry individually against Counter-Claim Defendant**

38.     Counter-Claimant realleges and incorporates as if fully set forth herein each of the allegations of this Second Amended Cross-Claim as if fully set forth herein.

39.     At the time Counter-Claim Defendant terminated Counter-Claimant, it failed to give him six months notice of termination and failed to pay him the requisite six months' worth of salary.

40.     In addition, Counter-Claim Defendant failed to pay to Counter-Claimant the $20,000 already earned as a reward/bonus.

41.     Counter-Claim Defendant's actions have violated CA Labor Code §§ 201 and 202, which require an employer to pay all wages due immediately upon an involuntary termination.

42.     On or about May 28, 2009, Counter-Claimant filed a wage claim with the Department of Industrial Relations, Division of Labor Standards Enforcement. This was before Counter-Claimant was served with Counter-Claim Defendant's complaint for conversion and unjust enrichment on or about June 2, 2009.

43.     Counter-Claim Defendant continues to fail to pay Counter-Claimant for the six months' salary owed him.

6

44.    Accordingly, Counter-Claimant is entitled to recover his unpaid wages at the applicable contract rate, in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### WAITING TIME PENALTIES
**By Michael Parry individually against Counter-Claim Defendant**

45.    Counter-Claimant realleges and incorporates as if fully set forth herein each of the allegations of this Second Amended Cross-Claim as if fully set forth herein.

46.    As previously alleged, upon termination of his employment, Counter-Claim Defendant has failed to pay Counter-Claimant for the six months' salary owed him.

47.    Furthermore, Counter-Claim Defendant has failed to pay Counter-Claimant for the $20,000.00 bonus/award.

48.    More than thirty days have elapsed since Counter-Claim Defendant failed to pay Counter-Claimant the wages listed in the above paragraph.

49.    Accordingly, under Labor Code §203, Counter-Claimant is entitled to recover waiting time penalties calculated at the daily rate of pay, multiplied by the number of days the wages went unpaid, to a maximum of thirty days, in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### LABOR CODE PRIVATE ATTORNEYS GENERAL ACT
**By Michael Parry individually against Counter-Claim Defendant**

50.    Counter-Claimant realleges and incorporates as if fully set forth herein each of the allegations of this Second Amended Cross-Claim as if fully set forth herein.

51.    By definition in the California Labor Code §2699 (a), Counter-Claimant is an aggrieved employee. He brings this cause of action on behalf of himself and other current or former employees affected by the labor law violations alleged in this cross-complaint.

52.    Prior to filing this cross-complaint, Counter-Claimant notified Counter-Claim Defendant and the Labor and Workforce Development Agency, via certified mail, of the specific violations of the Labor Code, as set out in this cross-complaint.

53.    Counter-Claim Defendant violated Labor Code §§201 and 202 by failing to pay Counter-Claimant all wages due on the date of the employee's involuntary termination or within 72 hours of receipt of notice of an employee's voluntary termination.

54.     Pursuant to Labor Code §2699(a), Counter-Claimant seeks to recover all civil penalties provided by Labor Code §210 for which Counter-Claim Defendant is liable as a result of its violations of Labor Code §204, in amount to be proven at trial.

**FIFTH CAUSE OF ACTION
CLASS CLAIM
BREACH OF CONTRACT**

55.     Counter-Claimant realleges and incorporates as if fully set forth herein each of the allegations of this Second Amended Cross-Claim as if fully set forth herein.

56.     Counter-Claimant and members of both the proposed National Rebate Class and the proposed California Kaiser Subclass entered into contracts with Counter-Claim Defendant NSM as RTS employees.

57.     Under these contracts, each RTS employee, including Counter-Claimant and each member of the proposed National Rebate Class and the proposed California Kaiser Subclass, were entitled to receive commissions under a "COMMISSION ON SALES" provision that defines "Gross Base Office Profits" as "sales minus cost of goods, shipping changes, sales adjustments, allowance for bad debt and bad debt write off."

58.     In calculating Gross Base Office Profits and in all its calculations of commission payments to RTS employees, Counter-Claim Defendant NSM has consistently failed to account for manufacturer kickbacks and/or rebates in calculating RTS commissions, in violation of the express terms of NSM's contract with Counter-Claimant and the members of the proposed National Rebate Class and the California Kaiser Subclass.  NSM's failure to account for kickbacks and/or rebates in paying commissions constitute a breach of the RTS employee contract.

59.     As to the California Kaiser Subclass, NSM arbitrarily set Gross Base Profits at an arbitrary percentage that was not accurate, injuring Counter-Claimant and each member of the California Base Kasier Subclass in addition to the monetary harm suffered as a result of NSM's breach of the RTS employee contract.

60.     As result, Counter-Claimant and the members of the proposed National Rebate Class and the proposed California Kaiser Subclass have not been paid all commissions owed to

8

them by NSM and have been injured and suffered consequential damages to be proved at trial.

### SIXTH CAUSE OF ACTION
### CLASS CLAIM
### FAILURE TO CALCULATE WAGES

61.     Counter-Claimant realleges and incorporates as if fully set forth herein each of the allegations of this Second Amended Cross-Claim as if fully set forth herein.

62.     All National Rebate and California Kaiser Class Members were subject and signed an employment agreement in which they were to be paid a percentage of Employee's proportional share of the total branch "Gross Base Office Profits," which is comprised of sales minus cost of goods, shipping charges, sales adjustments, allowances for bad debt and bad debt write off.

63.     Throughout his employment, Counter-Claimant requested Counter-Claim Defendant to explain how the net profit was computed for National Rebate and California Kaiser Class Members' commission, as well as how the branch split was divided.

64.     Counter-Claim Defendant did not comply with these requests.

65.     Many manufactures gave kickbacks and/or rebates to Counter-Claim Defendant thus lowering the true cost of goods, but this increased profit was not reported to Counter-Claimant and the National Rebate and California Kaiser Classes.  This resulted in Counter-Claimant and the National Rebate and California Kaiser Classes not receiving their proper commissions.

66.     As to the California Kaiser Subclass, NSM arbitrarily set Gross Base Profits at an arbitrary percentage that was not accurate, with the result that Counter-Claimant and each member of the California Base Kaiser Subclass was is owed unpaid wages in addition to the monetary harm suffered as a result of NSM's breach of the RTS employee contract.

67.     Counter-Claim Defendant continues to refuse Counter-Claimant and National Rebate and California Kaiser Class Members a proper accounting of how the cost of goods was calculated.

68.     Counter-Claimant and the National Rebate and California Kaiser Classes hereby

9

request an accurate computation of their wages due during the class period, the payment of those back wages and any other such restitution and compensation the court deems proper.

**SEVENTH CAUSE OF ACTION**
**FRAUD**
**CLASS CLAIM**

69.     Counter-Claimant realleges and incorporates as if fully set forth herein each of the allegations of this Second Amended Cross-Claim as if fully set forth herein.

70.     National Rebate and California Kaiser Class Members all engaged in conduct that profited Counter-Claim Defendant, in that National Rebate and California Kaiser Class members all represented and sold Counter-Claim Defendant's products to various entities and end users.

71.     As part of this relationship, Counter-Claim Defendant knowingly or recklessly misrepresented the total office profits under the ETS contract that formed the basis for Counter-Claimant and members of the National Rebate and California Kaiser Classes' commissions. Counter-Claim Defendant made this misrepresentation with the intent that Counter-Claimant and the National Rebate and California Kaiser Class members rely upon it.  Counter-Claimant and National Rebate and California Kaiser Class members reasonably relied on this misrepresentation, which related to a past existing fact—the true gross office profits—and suffered damages a result.

72.     Counter-Claimant has requested, on numerous occasions, an accounting of the Gross Base Profits and his proportional share and Counter-Claim Defendant has always refused to provide such an accounting, though it has continued to pay some commission sales, representing the commission sales to be the full amounts owed to the employees.

73.     Based on Counter-Claim Defendant's refusal to provide an accounting, Counter-Claimant and National Rebate and California Kaiser Class Members have reason to believe Counter-Claim Defendant is intentionally and deliberately misrepresenting and obfuscating the true value of the Gross Base Profits of each office.

74.     As to the California Kaiser Subclass, NSM intentionally or recklessly set Gross Base Profits at an arbitrary percentage that was not accurate, with the result that Counter-

10

---

1   Claimant and each member of the California Base Kaiser Subclass was is owed additional unpaid

2   wages.

3        75.    Counter-Claim Defendant's practices as they pertain to the calculation,

4   representation, and payment of Gross Base Profits are consistent across the country.

5        76.    Because of Counter-Claim Defendant's willfully fraudulent actions, Counter-

6   Claimant and the National Rebate and California Kaiser Class Members have been damaged.

7        77.    Counter-Claimant and National Rebate and California Kaiser Class Members

8   request their rightful commissions, punitive damages, injunctive and declaratory relief

9   prohibiting Counter-Claim Defendant from continuing its fraudulent miscalculation of wages,

10  and any other compensation the court deems proper.

**EIGHTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**CLASS CLAIM**

13       78.    Counter-Claimant realleges and incorporates as if fully set forth herein each of the

14  allegations of this Second Amended Cross-Claim as if fully set forth herein.

15       79.    As stated above, all National Rebate and California Kaiser Class Members were

16  subject to, or had signed, an employment agreement in which they were to be paid a percentage

17  of the employee's proportional share of the total branch "Gross Base Office Profits," which is

18  comprised of sales minus cost of goods, shipping charges, sales adjustments, allowances for bad

19  debt and bad debt write off. This proportional share in profits was a deliberate representation by

20  Counter-Claim Defendant to all the National Rebate and California Kaiser Class Members.

21       80.    Counter-Claim Defendant intended for Counter-Claimant and members of the

22  National Rebate and California Kaiser Classes to rely upon its representations about Gross

23  Office Profits and commissions owed.

24       81.    NSM acted in the course of its business when it negligently supplied false and/or

25  misleading information about Gross Office Profits and commissions owed to Counter-Claimant

26  and members of the National Rebate and California Kaiser Classes.

27       82.    Many manufactures gave kickbacks and/or rebates to Counter-Claim Defendant,

28  thus lowering the true cost of the goods.  Counter-Claim Defendant negligently failed to report

11

this increase of profit to Counter-Claimant and the National Rebate and California Kaiser Class Members, resulting in Counter-Claimant and National Rebate and California Kaiser Class Members not receiving their proper commissions. Counter-Claim Defendant knew or should have known that these kickbacks and/or rebates would increase the sales commissions owed to the Counter-Claimant and the National Rebate and California Kaiser Class Members.

83.     Counter-Claimant and National Rebate and California Kaiser Class Members reasonably relied on Counter-Claim Defendant's representations and have been damaged by not receiving their proper commissions.

84.     As to the California Kaiser Subclass, NSM arbitrarily set Gross Base Profits at an arbitrary percentage that was not accurate, with the result that Counter-Claimant and each member of the California Base Kaiser Subclass was is owed additional unpaid commissions.

85.     Counter-Claimant and National Rebate and California Kaiser Class Members request relief in the form of their commissions due, for injunctive and declaratory relief prohibiting Counter-Claim Defendant from continuing its fraudulent miscalculation of wages and any other compensation the court deems proper.

### NINTH CAUSE OF ACTION
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND
### FAIR DEALING – BAD FAITH
### CLASS CLAIM

86.     Counter-Claimant realleges and incorporates as if fully set forth herein each of the allegations of this Second Amended Cross-Claim as if fully set forth herein.

87.     Counter-Claim Defendant was obligated to compensate Counter-Claimant and members of the National Rebate and California Kaiser Classes a set share Gross Office Profits, as alleged above.

88.     Counter-Claimant has requested, on numerous occasions, accountings of the total office profits and the appropriate calculation of the proportional share.

89.     Counter-Claim Defendant has refused to provide such accountings and has continued to insist that the amounts it is paying to Counter-Claimant and members of the National Rebate and California Kaiser Classes, without accountings, are appropriately calculated

1  compensation.

2        90.    Counter-Claim Defendant has received kickbacks and/or rebates and has engaged

3  in other practices that lower the costs of the products it sells, which kickbacks and/or rebates and

4  other practices Counter-Claim Defendant has not revealed to Counter-Claimant and members of

5  the National Rebate and California Kaiser Classes, and which kickbacks and/or rebates and other

6  practices are not accounted for when calculating Counter-Claimant and National Rebate and

7  California Kaiser Class Members' compensation. This conduct has resulted in the intentional

8  deprivation of compensation already earned and lawfully owed to Counter-Claimant and

9  members of the National Rebate and California Kaiser Classes. Essentially, Counter-Claimant

10 alleges that Counter-Claim Defendant intentionally misstated its profits in order to enhance its

11 ultimate bottom line, lying to Counter-Claimant and members of the National Rebate and

12 California Kaiser Classes as to the true degree of its profits and thus deceiving Counter-Claimant

13 and members of the National Rebate and California Kaiser Classes as to the true and appropriate

14 amount of compensation due them.

15       91.    Furthermore, Counter-Claim Defendant has refused, prevented, and obstructed

16 Counter-Claimant and members of the National Rebate and California Kaiser Classes' attempts

17 to ascertain and calculate the true and appropriate amount of their compensation, thus dealing

18 with National Rebate and California Kaiser Class Members in bad faith.

19       92.    As to the California Kaiser Subclass, NSM arbitrarily set Gross Base Profits at an

20 arbitrary percentage that was not accurate, with the result that Counter-Claimant and each

21 member of the California Base Kaiser Subclass was is owed additional unpaid wages.

22       93.    In so dealing with Counter-Claimant and National Rebate and California Kaiser

23 Class Members, Counter-Claim Defendant acted despicably with a conscious and willful

24 disregard of the rights of the Counter-Claimant and members of the National Rebate and

25 California Kaiser Classes, with the purpose of depriving Counter-Claimant and members of the

26 National Rebate and California Kaiser Classes from compensation already earned and lawfully

27 due to them, causing Counter-Claimant and members of the National Rebate and California

28 Kaiser Classes to suffer financial loss. Counter-Claim Defendant's oppressive and malicious

13

Second Amended Counter-Complaint for Michael Parry

conduct toward the Counter-Claimant and members of the National Rebate and California Kaiser Classes was in bad faith, justifying an award of compensatory, exemplary, and punitive damages.

**TENTH CAUSE OF ACTION**
**VIOLATION OF UNFAIR COMPETITION LAW – Cal. Bus. & Prof. Code §17200**
**BY COUNTER-CLAIMANT AND THE CALIFORNIA KAISER SUBCLASS**

94.   Counter-Claimant realleges and incorporates as if fully set forth herein each of the allegations of this Second Amended Cross-Claim as if fully set forth herein.

95.   The California Business and Professions Code provides for a Cause of Action where Counter-Claim Defendants, as part of their business practices, engage in a course of conduct that is "unlawful, unfair or fraudulent." Cal. Bus. Prof. Code §17200.

96.   Counter-Claim Defendant has unlawfully, unfairly, and fraudulently miscalculated the commissions due Counter-Claimant and California Kaiser Subclass.

97.   Counter-Claimant and California Kaiser Subclass Members hereby seek relief in the form of restitution for wages and compensation lost and for injunctive and declaratory relief prohibiting Counter-Claim Defendant from continually promulgating, implementing, and enforcing policies that deny Counter-Claimant and California Kaiser Subclass Members their just commissions.

**ELEVENTH CAUSE OF ACTION**
**REQUEST FOR ACCOUNTING**
**By all Counter-Claimants against Counter-Claim Defendant**

98.   Counter-Claimant realleges and incorporates as if fully set forth herein each of the allegations of this Second Amended Cross-Claim as if fully set forth herein.

99.    Counter-Claim Defendant owes Counter-Claimant and members of the National Rebate and California Kaiser Classes wages from commissions that were improperly computed, along with statutory penalties and interest.

100.   Counter-Claimant and members of the National Rebate and California Kaiser Classes do not know the precise amounts of compensation due them. Counter-Claim Defendant possesses records from which the amount of compensation due Counter-Claimant and members of the National Rebate and California Kaiser Classes can be appropriately determined.

101.   As the amounts due Counter-Claimant and members of the National Rebate and

14

California Kaiser Classes in statutory interest and penalties are based on the compensation already due Counter-Claimant and members of the National Rebate and California Kaiser Classes, these amounts can only be determined by an accounting of Counter-Claim Defendant's books and records.

WHEREFORE, Counter-Claimant individually prays for judgment as follows:

1.      For compensatory damages according to proof and prejudgment interest thereon to the extent allowable by law;

2.      For exemplary and punitive damages according to proof;

3.      For "Waiting Time" Penalties, as defined and applicable under Cal. Lab. Code §§ 203, 218;

4.      For the payment of Counter-Claimant's attorney fees, costs, and expenses incurred pursuant to all applicable provisions of California Law including, but not limited to, Cal. Lab. Code §§ 218.5, 1194, and Cal. Code Civ. Pro § 1021.5;

5.      For such other and further relief as the court may deem proper.

WHEREFORE, Counter-Claimant and Counter-Claimant and members of the National Rebate and California Kaiser Classes pray judgment as follows:

1.      An order declaring this action to be a class action and appointing the law firm of Kershaw, Cutter & Ratinoff, LLP and the Law Offices of Mark P. Meuser as class counsel and certifying the class as alleged and requested herein;

2.      For compensatory damages according to proof at trial;

3.      For exemplary and punitive damages according to proof;

4.      For pre-judgment interest at the legal rate from and after January 11, 2009 at the legal rate;

5.      For an Accounting, as requested in the Eleventh Cause of Action;

6.      For the payment of Counter-Claimant's attorney fees, costs, and expenses incurred pursuant to all applicable provisions of California and Federal Law including, but not limited to, Cal. Lab. Code §§ 218.5, 1194, Cal. Code Civ. Pro § 1021.5, and Fed. R. Civ. P. 23; and

Second Amended Counter-Complaint for Michael Parry

7.     For such other and further relief as the court may deem proper.

Dated:  June 19, 2012                      Respectfully submitted,

Kershaw, Cutter & Ratinoff, LLP


By:  ___/s/ C. Brooks Cutter_____
         C. Brooks Cutter


Law Offices of Mark P. Meuser


By:  ___/s/ Mark P. Meuser_____
         Mark P. Meuser

Second Amended Counter-Complaint for Michael Parry