United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NATIONAL SEATING & MOBILITY, INC.,

          Plaintiff,

  v.

MICHAEL PARRY, et al.

          Defendants.

AND RELATED COUNTER-CLAIM

_____/

No.  C 10-02782 JSW

**ORDER GRANTING IN PART
AND DENYING IN PART
RENEWED MOTION FOR CLASS
CERTIFICATION**

**INTRODUCTION**

      This matter comes before the Court upon consideration of the renewed Motion for Class

Certification, filed by Defendant and Counterclaimant, Michael Parry ("Parry").  The Court has

considered the parties' papers, relevant legal authority, the record in this case, and has had the

benefit of oral argument.  The Court HEREBY GRANTS IN PART AND DENIES IN PART

Parry's motion.[1]

**BACKGROUND**

      In 2007, Parry and National Seating & Mobility, Inc. ("NSM") entered into a

Employment Agreement to employ Parry at NSM's Hayward, California branch as a

Rehabilitation Technological Supplier ("RTS").  (*See* Docket No. 97, Second Amended

Counter-Complaint ("SACC") ¶¶ 3-4, 8; Docket No. 36-1, Declaration of Michael Parry, ¶ 3,

---

[1]    **The Court HEREBY ORDERS that, in the future, the parties must
comply with Northern District Civil Local Rule 3-4(c)(2) regarding font size for
footnotes and must comply with this Court's Standing Order for page limitations on
motions other than motions for summary judgment.  If the parties fail to comply with
these rules, the Court shall strike offending briefs from the record.**

United States District Court

For the Northern District of California

Ex. A (Employment Agreement).)[2]  Pursuant to the terms of the Employment Agreement, Parry was to "receive, as compensation, that amount which is equal to twenty percent (20%) of Employee's proportional share of the total branch Gross Base Office Profits attributable to sales of Equipment made by Employee during the term of this Employment Agreement." (Employment Agreement, ¶ 4 & Ex. A.)

The term "Gross Base Office Profits" means "sales minus cost of goods, shipping charges, sales adjustments, allowances for bad debt and bad debt write off." (*Id.*)  Most RTS employees signed Employment Agreements and compensation schedules that were similar to Parry's.  However, there are some RTS employees who have received a greater or lesser percentage of Gross Base Office Profits.  (Docket No. 50-1, Declaration of Ronald Bushner ("Bushner Decl."), Ex. A (Deposition of William Michael Ballard ("Ballard Depo.") at 15:5-16, 19:21-21:16).)  Parry alleges that NSM failed to include rebates that it received from suppliers when it calculated RTS compensation.  Thus, according to Parry, NSM did not properly report to RTS employees the true costs of goods and did not give them a proper accounting of how cost of goods was calculated.  (*See* SACC ¶¶ 27-29, 56-58, 71, 79-82, 90.)

NSM also does business with Kaiser Permanente.  According to the record, unlike most of the insurers with whom NSM works, Kaiser does not work on a fee for service basis.  (*See* Docket No. 50-2, Declaration of William Michael Ballard ("Ballard Decl."), ¶¶ 14-17; Bushner Decl., Ex. A (Ballard Depo. at 111:1-113:25).)  NSM claims that, to address this difference, it paid RTS employees working for Kaiser under the Standard Compensation Schedule by assuming a margin on Kaiser sales that is similar to the margin on FFS sales.  (*See* Ballard Decl., ¶ 18; Bushner Decl., Ex. A (Ballard Depo. at 114:1-115:25).)  Parry alleges that these actions improperly changed the terms of the manner in which commissions were calculated for the Kaiser account and "arbitrarily set Gross Base Profits at an arbitrary percentage that was not accurate...."  (*See, e.g.,* SACC ¶ 59.)

---

[2]     The parties have incorporated by reference argument, exhibits and declarations filed in connection with the original motion for class certification.  Thus, when necessary, the Court has relied on those materials.

**United States District Court**
For the Northern District of California

1    Based on these allegations, Parry asserts claims on behalf himself and the putative

2    classes for: Breach of Contract; Fraud; Negligent Misrepresentation; Breach of the Implied

3    Covenant of Good Faith and Fair Dealing - Bad Faith; and Violations of California Business &

4    Professions Code sections 17200, *et seq.*.[3]   Parry seeks to certify the following classes:

> All Rehab Technology Suppliers ("RTSs") employed by National Seating
> & Mobility, Inc. ("NSM"), for the period from February 5, 2004 until the
> present who signed an Employment Agreement with NSM that contains a
> Tennessee choice of law clause and which contains a "Commission on
> Sales" provision that defenses "Gross Base Office Profits" as "sales minus
> cost of goods, shipping charges sales adjustments, allowing for bad debt
> and bad debt write off" (the "National Rebate Class").

> All Rehab Technology Suppliers ("RTSs") employed by National Seating
> & Mobility, Inc. ("NSM"), to service Kaiser Permanente ("Kaiser" in
> California, for the period from February 5, 2004 until the present who
> signed an Employment Agreement with NSM that contains a Tennessee
> choice of law clause and which contains a "Commission on Sales"
> provision that defines "Gross Base Office Profits" as "sales minus cost of
> goods, shipping charges, sales adjustments, allowing for bad debt and bad
> debt write off" (the "California Kaiser Rebate Class").

14   (*See* SACC ¶ 19).)

15   On October 12, 2011, the Court denied Parry's initial motion for class certification

16   without prejudice.  (Docket No. 59.)  The Court: (1) found that Parry had not met his burden to

17   show the Kaiser subclass satisfied the numerosity requirement; (2) determined that a choice of

18   law issue precluded the Court from determining whether Parry could satisfy the commonality

19   and predominance requirements; and (3) raised concerns about the adequacy of class counsel.

20   Parry now renews his motion for class certification.

21   //

22   //

23   //

24

25

---

26   [3]   Parry also asserts claims for relief for "Failure to Calculate Wages" and for an
accounting.  Parry failed to address either of these claims in his choice of law analysis.
Moreover, he does not clearly articulate the legal basis for the claim for failure to calculate
27   wages, *i.e.* whether it is premised on a violation of a statute or premised on common law.
Because Parry does not address these claims, the Court finds he fails to meet his burden to
28   show they are appropriate for class treatment.  Therefore, the Court DENIES to the motion to
certify these claims for class treatment.

**ANALYSIS**

**A.     Choice of Law.**

Because the choice of law issue impacts the Court's analysis of several of the factors under Federal Rule of Civil Procedure 23 ("Rule 23"), the Court resolves it as a threshold matter.  As the moving party, and the party seeking to apply Tennessee law to a nationwide class, Parry must demonstrate that the application of Tennessee law would satisfy constitutional due process requirements under *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).  *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001).[4]

The Employment Agreement contains the following provision:

> GOVERNING LAW AND JURISDICTION.  Notwithstanding any principles of conflict of law, which otherwise might apply, this Agreement shall be governed by, and construed in accordance with, the laws (statutory and jurisprudential) of the State of Tennessee, regardless of the state wherein its provisions might be adjudicated.  If litigation is instituted by [NSM] which is based upon any claim or controversy arising out of or relating to this Agreement, [NSM] shall have the option to file any such litigation in any court of competent jurisdiction (state or federal) in the State of Tennessee, and if [NSM] exercises such option, then Employee does here submit, irrevocably, to the jurisdiction of any such court in the state of Tennessee.

(Employment Agreement, ¶ 9.)

A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law.  *Id.*  California law sets forth two different choice of law tests:

> When the parties have an agreement that another jurisdiction's law will govern their disputes, the appropriate analysis for the trial court to undertake is set forth in *Nedloyd* [*Lines B.V. v. Superior Court*, 3 Cal.4th 459 (1992)], which addresses the enforceability of contractual choice-of-law provisions.  Alternatively, when there is no advance agreement on applicable law, but the action involves the claims of residents from outside California, the trial court may analyze the governmental interests of the various jurisdictions involved to select the most appropriate law.  As we shall explain, a trial court considering nationwide class certification might be required to utilize both analyses.

*Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 914-15 (2001).

---

[4]     Contrary to Parry's position, in light of the choice-of-law provision and the manner in which Parry has defined the California Kaiser Rebate Subclass, there is an issue as to whether the Court can apply the UCL to that subclass, which is addressed below.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Under the framework set forth in *Nedloyd*, "the trial court should first examine the choice-of-law clause and ascertain whether the advocate of the clause has met its burden of establishing that the various claims of putative class members fall within its scope." *Washington Mutual*, 24 Cal. 4th at 916. If the claims fall within the scope of a choice-of-law provision, a court then determines:

> (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue ...." If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

*Nedloyd*,, 3 Cal. 4th at 466 (footnotes omitted, quoting Restatement Second of Conflict of Laws § 187). The *Nedloyd* court also noted that "there may be an occasional case in which California is the forum, and the parties have chosen the law of another state, but the law of yet a third state, rather than California's, would apply absent the parties' choice. In that situation, a California court will look to the fundamental policy of the third state in determining whether to enforce the parties choice of law." *Id.* at 466 n.5.

**1.      The Class Claims Fall Within the Scope of the Choice of Law Provision.**

Parry seeks to apply Tennessee law to the contract and tort claims. He also takes the position that the UCL claim does not fall within the choice-of-law provision, because he only seeks to apply that claim to the California Kaiser Rebate Subclass.[5] The flaw in this argument

---

[5]      NSM does not dispute that the contract claim would fall within the scope of the choice-of-law provision, but it did argue that Parry failed to show that all class members signed an Employment Agreement containing that choice of law provision. In his reply, Parry proposed a modified class definition that limits the class to those persons who have signed such an agreement. The Court also granted Parry's motion to amend his counterclaim to expressly include that definition. (*See* Docket No. 96.) In light of this revised definition, the Court concludes Parry has shown that the choice of law provision will apply to all class members, including the California Kaiser Rebate Subclass.

United States District Court

For the Northern District of California

1    is that Parry defined the California Kaiser Rebate Subclass to include RTS employees who

2    signed an Employment Agreement containing the choice-of-law provision.  Accordingly, to

3    maintain a UCL claim, Parry must show that the claim would *not* fall within the scope of that

4    provision.

5           Parry and NSM did not provide the Court with any authority, whether under California

6    or Tennessee law, to support their respective constructions of the choice-of-law provision.  *See*

7    *Washington Mutual*, 24 Cal. 4th at 916 n.3 ("the scope of a choice-of-law clause in a contract is

8    a matter that ordinarily should be determined under the law designated therein").[6]  Under

9    Tennessee law, when a court construes a contract it looks "to the language of the instrument and

10   to the intention of the parties, and impose a construction which is fair and reasonable.'"

11   *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996) (quoting *TSC*

12   *Industries, Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. App. 1987)).  NSM notes that the

13   choice-of-law provision also includes a forum selection clause, which states that NSM has the

14   option to choose where claims "arising out of" the Employment Agreement will be litigated.

15   NSM argues that this clause shows that the parties intended a more narrow construction for the

16   choice-of-law provision.  The Court finds that argument unpersuasive, especially in light of the

17   fact that NSM fails to point the Court to any Tennessee law supporting their construction.

18          California law also supports the Court's determination that the choice-of-law provision

19   should not be construed narrowly.[7]  "[A] valid choice-of-law clause, which provides that a

20   specified body of law 'governs' the 'agreement' between the parties encompasses all causes of

21   action arising from or related to that agreement, regardless of how they are characterized,

22

23

24          [6]      In response to questions posed by the Court in advance of the hearing, Parry
     submitted additional authority that addresses Tennessee choice-of-law rules.  (*See* Docket
25   No. 99.)  The Court does not find those cases instructive, because they do not clearly address
     how a Tennessee court would construe the *scope* of the choice-of-law provision.
26

27          [7]      *See, e.g., Nedloyd*, 3 Cal. 4th at 469 n.7 (applying California law, although
     contract to be construed under Hong Kong law, where parties failed to provide court with
28   relevant law); *Olnick v. BMG Entertainment, Inc.*, 138 Cal. App. 4th 1286, 1299 n.9 (2006)
     (applying California law, even though contract stated that it was to be construed under New
     York law, where parties failed to provide court with relevant law).

1   including tortious breaches of duties emanating from the agreement or the legal relationship it

2   creates." *Nedloyd*, 3 Cal. 4th at 470.

3        Like the choice-of-law provision in *Nedloyd*, the choice-of-law provision at issue here

4   states that it will be "governed by and construed in accordance" with Tennessee law.  In his

5   original motion, Parry stated that "[a]t the heart of" the claims of both proposed classes "is the

6   issue of whether NSM breached its contract with the RTSs by failing to properly calculate their

7   incentive compensation."  (Docket No. 36, Mot. for Class Cert. at 6:6-7; *see also id.* at 9:1-7

8   (addressing basis for fraud claims).)  Moreover, at oral argument, Parry conceded that his tort

9   claims rise and fall upon the viability of the contract claim and, thus, depend upon the proper

10  construction of the Employment Agreement.  Although Parry does not concede this point, the

11  same is true for the UCL claim.

12       The Court finds that the choice-of-law provision is broad enough to encompass the

13  breach of contract, the tort claims, and the UCL claim.  *Nedloyd*, 3 Cal. 4th at 470; *cf.*

14  *Medimatch, Inc. v. Lucent Technologies, Inc.*, 120 F. Supp. 2d 842, 861-62 (N.D. Cal. 2000)

15  (dismissing UCL claim on basis that claim fell within scope of New Jersey choice-of-law clause

16  that provided "the construction, interpretation and performance of this Agreement shall be

17  governed by the local laws of the State of New Jersey").

18       **2.**     **Tennessee Has a Substantial Relationship to the Parties.**

19       NSM's principal place of business is in Tennessee, which shows that Tennessee has a

20  substantial relationship to the parties and the transaction.  *See Hatfield v. Halifax PLC*, 564 F.3d

21  11177, 1182 (9th Cir. 2009) (finding substantial relationship between England and parties

22  where defendant was based in United Kingdom); *Hambrecht & Quist Venture Partners v.*

23  *American Medical International, Inc.*, 38 Cal. 4th 1532, 1545-46 (1995) ("parties to a contract

24  have a substantial relationship to chosen state if one or more of them is incorporated there");

25  *Nedloyd*, 3 Cal. 4th at 467.

26       **3.**     **There is No Conflict With a Fundamental Policy.**

27       The next step in the *Nedloyd* analysis is to determine whether Tennessee law is contrary

28  to a fundamental policy of any of the states where potential class members reside.  Because

1  Parry assumed that there was no choice-of-law issue on the UCL claim, he did not address

2  whether there is a conflict between Tennessee and California law on this claim.

3         As to the remaining claims, Parry argues that there is no conflict between Tennessee law

4  and the law of any other forum.  By way of example, he notes that this case does not involve the

5  enforcement of a non-compete clause.  Although NSM identifies several variations in the

6  various state laws that might apply in absence of the choice-of-law provision in its sur-reply, it

7  raises these issues in the context of whether Parry can establish the predominance and

8  superiority requirements.  Further, on review of those differences, the Court cannot conclude

9  that these differences implicate *fundamental policy* concerns.

10        The Court is satisfied that Parry has shown that it is appropriate to apply Tennessee law

11  to the contract and tort claims.  However, because Parry has failed to show that there is a

12  conflict between California law and Tennessee law on the UCL claim, he fails to show that the

13  UCL claim should not be governed by the choice-of-law provision.[8]  Because the parties'

14  choice of law provision will govern that claim, the Court DENIES Parry's motion to certify the

15  California Kaiser Rebate Subclass.  *See Medimatch*, 120 F. Supp. 2d at 861-62.

16  **B.     Applicable Legal Standard on Motion for Class Certification.**

17        "Class certifications are governed by Federal Rule of Civil Procedure 23," and a

18  plaintiff seeking class certification bears the burden of "demonstrating that he has met each of

19  the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)."  *Lozano*

20  *v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007).  If a plaintiff fails to establish

21  any of Rule 23's requirements, it will "destroy[] the alleged class action."  *Schwartz v. Upper*

22  *Deck Co.*, 183 F.R.D. 672, 674 (S.D. Cal. 1999) (citing *Rutledge v. Electric Hose & Rubber*

23  *Co.*, 511 F.2d 668, 673 (9th Cir. 1975).  Any doubts regarding the propriety of class

24  certification generally should be resolved in favor of certification.  *See, e.g., Gonzales v. Arrow*

25  *Fin. Servs., LLC*, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007).  However, "[c]lass certification

26  is not immutable, and class representative status could be withdrawn or modified if at any time

27

28        [8]       Indeed, in his opening brief, Parry seems to argue that no such conflict exists.
(*See* Document No. 65, Renewed Motion at 23:18-24:13.)

United States District Court

For the Northern District of California

1   the representatives could no longer protect the interests of the class." *Cummings v. Connell*,

2   316 F.3d 886, 896 (9th Cir. 2003) (citing *Soc. Servs. Union, Local 535 v. County of Santa*

3   *Clara*, 609 F.2d 944, 948-49 (9th Cir. 1979)).

4   **C.      Parry Satisfies the Requirements of Rule 23(a).**

5         Under Rule 23(a), Parry must demonstrate that: "(1) the class is so numerous that

6   joinder of all members is impracticable, (2) there are questions of law or fact common to the

7   class, (3) [his] claims or defenses of the representative parties are typical of the claims or

8   defenses of the class, and (4) [he] will fairly and adequately protect the interests of the class."

9   Fed. R. Civ. P. 23(a).

10        **1.      Numerosity.**

11        In its Order on Parry's initial motion, the Court found that Parry demonstrated that the

12  Nationwide Rebate Class is "so numerous that joinder of all members is impracticable."  (Order

13  Denying Motion to Certify Class at 5:12-13, 19-22.)

14        **2.      Commonality.**

15        Commonality requires that there be "questions of fact and law which are common to the

16  class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement has been construed

17  permissively and is "less rigorous than the companion requirements of Rule 23(b)(3)."  *Hanlon*

18  *v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "All questions of fact and law need not

19  be common to satisfy the rule.  The existence of shared legal issues with divergent factual

20  predicates is sufficient, as is a common core of salient facts coupled with disparate legal

21  remedies within the class."  *Id.*

22        Parry puts forth evidence that NSM uses a standardized Employment Agreement and

23  that the compensation structure for RTS employees is substantially similar.  (*See* Bushner Decl.,

24  Ex. A (Ballard Depo. at 15:5-16, 19:21-20:16).)  Moreover, based on Parry's theory of the case,

25  even if the actual percentage of commissions vary slightly, each of the Employment

26  Agreements contains the terms that are disputed.  Parry also asserts that NSM made standard

27  misrepresentations as to how it calculated "Gross Base Office Profits," because it failed to

28  account for manufacturer rebates or kickbacks.  *See In re First Alliance Mortgage*, 471 F.3d

United States District Court
For the Northern District of California

9

977, 990-91 (9th Cir 2006) (finding that fraud class met commonality requirement where defendant alleged to have made standardized representations to class members). Each of Parry's claims will require a fact-finder to determine whether NSM improperly calculated incentive compensation by excluding rebates from "cost of goods."

NSM argues, however, that Parry has not shown that every RTS employee performed work that would enable NSM to obtain a rebate, either because they did not work for a supplier that provided rebates or because they did not sell the type or category of product that would lead to a rebate. The Court finds these arguments raise issues of whether individualized issues may predominate. Under the less rigorous requirements of Rule 23(a), where "[t]he existence of shared legal issues with divergent factual predicates is sufficient," the Court finds that the proposed classes share sufficient commonality to satisfy the requirements of Rule 23(a)(2).

### 3. Typicality.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As with the commonality requirement, the typicality requirement is applied permissively. *Hanlon*, 150 F.3d at 1020. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.*; *see also Lozano*, 504 F.3d at 734 ("Under Rule 23(a)(3) it is not necessary that all class members suffer the same injury as the class representative."); *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("In determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff.") (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Thus, typicality is "'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani,* 126 F.3d 372, 376 (2nd Cir. 1997)).

NSM argues that Parry's claims are not typical of other class members, because he was not a stellar employee. However, as to the class claims, Parry's theory of the case is that NSM engaged in a uniform course of conduct, which impacted the manner in which it calculated

**United States District Court**
For the Northern District of California

1    commissions.  Resolution of that question will depend upon an interpretation of the

2    Employment Agreement.  NSM's argument that Parry was not a stellar employee may impact

3    whether NSM had a basis to terminate him.  It does not, however, render Parry's claims

4    atypical.  Indeed, NSM raised the same argument it raised in its opposition to the original

5    motion in an effort to show Parry was not an adequate class representative.  The Court still finds

6    the argument unpersuasive.

7            Accordingly, the Court finds Parry has met his burden to show the class claims meet the

8    typicality requirement.

9            **4.        Adequate Representation.**

10           "To satisfy constitutional due process concerns, absent class members must be afforded

11   adequate representation before entry of a judgment which binds them."  *Hanlon v. Chrysler*

12   *Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  In order to determine whether the adequacy prong

13   is satisfied, courts consider the following two questions: "(1) [d]o the representative plaintiffs

14   and their counsel have any conflicts of interest with other class members, and (2) will the

15   representative plaintiffs and their counsel prosecute the action vigorously on behalf of the

16   class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  In its previous order, the

17   Court found that Parry was an adequate class representative but expressed concerns about the

18   adequacy of counsel.  A such, it directed Parry to supply additional information about counsel's

19   qualifications to prosecute a nationwide class action with "zeal and competence."  *Fendler v.*

20   *Westgate California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975).

21           After the Court denied his original motion, Parry engaged Kershaw, Cutter and Ratinoff

22   LLP as co-counsel in this case.  Based on the evidence presented, the Court concludes that

23   Parry has shown that counsel has the qualifications to prosecute a nationwide class action.  (*See*

24   Docket No. 65-2, Declaration of Mark P. Meuser, ¶¶ 2-4; Docket No. 65-3, Declaration of C.

25   Brooks Cutter, ¶¶ 2-5, Ex. A.)

26           The Court finds that Parry has satisfied the requirements of Rule 23(a).

27   **D.        Parry Satisfies the Requirements of Rule 23(b), in Part.**

28

In order to certify a class under Rule 23(b)(3), Parry must establish that "common questions . . . 'predominate over any questions affecting only individual members,'" and he also must establish that class resolution is "'superior to other available methods for the fair and efficient adjudication of the controversy.'"  *Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P. 23(b)(3)).  For the reasons discussed below, the Court finds that Parry has satisfied the requirements of Rule 23(b) for the claims for breach of contract, breach of the covenant of good faith and fair dealing, and an accounting.  The Court finds that he has not satisfied these requirements on the claims for fraud and negligent misrepresentation.

**1.     Predominance.**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  "To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical.  Rather, the predominance inquiry focuses on whether the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'"  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1065 (N.D. Cal. 2007) (quoting *Las Vegas Sands*, 244 F.3d at 1162, in turn quoting *Amchem,* 521 U.S. at 623).  In order to determine whether common issues predominate, the Court decides neither the merits of the parties' claims or defenses nor "whether the plaintiffs are likely to prevail on their claims.  Rather, the Court must determine whether plaintiffs have shown that there are plausible classwide methods of proof available to prove their claims."  *Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 489 (C.D. Cal. 2006).  In order to determine whether common questions predominate, the Court must analyze the elements of each of the claims Parry asserts against NSM.  *See Keilholtz*, 268 F.R.D. at 342.

**a.     Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.**

In order to establish a breach of contract claim under Tennessee law, Parry must establish the existence of a valid contract, defendant's breach, and damages caused by the

United States District Court
For the Northern District of California

1   breach. *See, e.g., Life Care Centers of America, Inc. v. Charles Town Associates Ltd.*

2   *Partnership*, 79 F.3d 496, 514 (6th Cir. 1996). Tennessee also recognizes a cause of action for

3   breach of the implied covenant of good faith and fair dealing. *See Wallace*, 938 S.W.2d at 686

4   (Tenn. 1996). "'What this duty consists of, however, depends upon the individual contract in

5   each case." *Id.* (quoting *TSC Industries, Inc.*, 743 S.W.2d at 173).

6        Parry relies heavily on the same arguments and issues he raised in connection with the

7   commonality requirement to support his argument that he can satisfy the predominance

8   requirement. NSM's arguments in opposition focus primarily on the choice of law issue. By

9   definition the proposed class includes only those RTS employees who signed an Employment

10  Agreement. Parry's theory of the case is that NSM purportedly breached the same terms of

11  each and every class members' Employment Agreement. Although NSM argues that Parry has

12  not shown that every RTS employee performed work that would enable NSM to obtain a rebate,

13  Parry's theory of the case is that NSM only qualified for rebates because of the group efforts of

14  its RTS employees.

15       NSM also argues that individualized issues of damages should preclude class

16  certification. If Parry proves that NSM did breach the terms of the Employment Agreement,

17  because the manner in which it calculated RTSs compensation did not comport with the terms

18  of the Employment Agreement, he will be able to prove the *fact* of damages on a classwide

19  basis. Even if there are minor differences in the percentage of commissions owed to class

20  members, "damage calculations alone cannot defeat certification." *Yokoyama v. Midland Nat'l*

21  *Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *see also Blackie v. Barrack*, 524 F.2d 891,

22  905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not

23  defeat class action treatment.").

24       Accordingly, the Court finds that Parry has shown that common issues predominate on

25  his claims for breach of contract and breach of implied covenant of good faith and fair dealing.

26       **2.      Fraud and Negligent Misrepresentation.**

27       In order to state claims for fraud and negligent misrepresentation under Tennessee law,

28  Parry must show that NSM misrepresented a material fact or produced a false impression, that it

13

United States District Court

For the Northern District of California

1  knew the representation was false, that it acted with the intent to mislead or obtain an undue

2  influence over another, and that Parry and the plaintiff class reasonably relied on the

3  misrepresentation to their detriment.  *See, e.g., Black v. Black*, 166 S.W.3d 699, 705 (Tenn.

4  2005).  Under Tennessee law, a negligent misrepresentation claim also requires proof of

5  justifiable reliance.  *McNeil v. Nofal*, 185 S.W.3d 402, 409 (Tenn. Ct. App. 2005).

6          Parry argues that the fraud and negligent misrepresentation claims are based on a

7  common course of conduct and, thus, are amenable to class treatment.  Reliance is an essential

8  element of both of these claims, and although Parry *argues* that he and the class relied to their

9  detriment on the alleged misrepresentations, he fails establish how he intends to *prove* reliance

10 on a classwide basis.  (*See* Docket No. 36, Mot. for Class Cert. at 18:13-20:10; Docket No. 65,

11 Renewed Motion at 13:6-14:11 & n.11.)  Nor does Parry suggest that the facts in this case

12 would warrant a presumption of reliance.  *See, e.g., Gariety v. Grant Thorton, LLP*, 368 F.3d

13 356, 362-64 (4th Cir. 2004); *Binder v. Gillespie*, 184 F.3d 1059, 1063-65 (9th Cir. 1999); *Brazil*

14 *v. Dell, Inc.*, 2010 WL 5387831, at *5 (N.D. Cal. Dec. 21, 2010) (concluding that under

15 California law, plaintiff could establish presumption of reliance by showing that

16 misrepresentation was material).

17         Accordingly, the Court finds that he has not met his burden on the fraud and negligent

18 misrepresentation claims to show that common issues predominate.

19              **2.      Superiority.**

20         A plaintiff can satisfy the superiority requirement when he or she can show that "class-

21 wide litigation of common issues will reduce litigation costs and promote greater efficiency."

22 *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  In order to make this

23 determination, the Court should consider the following factors: "the interest of members of the

24 class in individually controlling the prosecution or defense of separate actions; the extent and

25 nature of any litigation concerning the controversy already commenced by or against members

26 of the class; the desirability or undesirability of concentrating the litigation of the claims in the

27 particular forum; the difficulties likely to be encountered in the management of a class action."

28 Fed. R. Civ. P. 23(b)(3)(A)-(D).

**United States District Court**
For the Northern District of California

1    The Court has determined there are a sufficient number of class members to render

2   joinder impracticable.  There is nothing in the record that suggests individual class members

3   would have a greater interest in prosecuting these issues in separate actions, and there are no

4   other actions pending that relate to the issues raised herein.  Finally, nothing in the record

5   suggests that concentrating the litigation in this forum would be undesirable.  Therefore, the

6   first three factors weigh in favor of finding a class action a superior method of adjudicating this

7   case.  NSM's argument against superiority was based primarily on the choice of law issue.

8   Because the Court has concluded that Tennessee law applies to the claims for breach of contract

9   and breach of the implied covenant of good faith and fair dealing, the potential for variations

10   amongst the state laws is a moot point and does not pose manageability problems.

11    The Court concludes that a class action is a superior method of resolving the claims for

12   breach of contract and breach of implied covenant of good faith and fair dealing, and it shall

13   certify these claims for class treatment.

### CONCLUSION

15    For the foregoing reasons, Parry's Renewed Motion for Class Certification is

16   GRANTED IN PART AND DENIED IN PART.  The parties are scheduled to appear for a case

17   management conference on July 27, 2012 at 1:30 p.m.  The parties' joint case management

18   conference statement shall include a section on how they intend to proceed with class notice.

19    **IT IS SO ORDERED.**

20   Dated: July 16, 2012

21   JEFFREY S. WHITE
     UNITED STATES DISTRICT JUDGE